J-A24027-19

2020 PA Super 1

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERRELL LAMAR CLARY | : | |
| | : | |
| Appellant | : | No. 3105 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 31, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0008066-1999

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERRELL LAMAR CLARY | : | |
| | : | |
| Appellant | : | No. 3107 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 31, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001873-2000

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

OPINION BY DUBOW, J.:                              Filed: January 2, 2020

Appellant, Terrell Lamar Clary, appeals from the May 31, 2018 Judgment

of Sentence of 48 years' to life imprisonment imposed upon resentencing after

the grant of post-conviction relief based on *Miller v. Alabama*, 567 U.S. 460

---

[*] Retired Senior Judge assigned to the Superior Court.

(2012), and ***Montgomery v. Louisiana***, \_\_\_U.S.\_\_\_, 136 S.Ct. 718 (2016).[1]
Appellant challenges certain evidentiary rulings made at his resentencing
hearing, as well as the discretionary aspects and legality of his sentence. After
careful review, we affirm.

**Facts and Procedural History**

A detailed recitation of the procedural and factual history is unnecessary
to our disposition. Briefly, in 1999, when Appellant was 16 years old, he shot
Juan Watson in the chest. The next day, he shot and killed William Six.
Appellant was charged, *inter alia*, with the murder of Mr. Six and attempted
murder of Mr. Watson.

On August 17, 2000, a jury found Appellant guilty of First-Degree
Murder and related charges in the death of Mr. Six (Docket No. 8066-99) and
guilty of Attempted Murder and related charges in the shooting of Mr. Watson
(Docket No. 1873-00).[2] On November 6, 2000, the court sentenced Appellant,
in relevant part, to a statutorily mandated sentence of life without parole

---

[1] In ***Miller***, the U.S. Supreme Court held that it is unconstitutional for state
courts to impose an automatic LWOP upon a homicide defendant for a murder
committed while the defendant was under eighteen years old. ***Miller***, 567 U.S.
at 479. In ***Montgomery***, the U.S. Supreme Court held that its decision
in ***Miller, supra***, applies retroactively. ***Montgomery***, 136 S.Ct. at 732.

[2] The matters were consolidated for trial. Appellant filed an appeal for each
docket and filed an Application for Consolidation, asserting that the issues on
both appeals are identical. This Court granted the Application and consolidated
the matters on appeal.

("LWOP") for the first-degree murder conviction.[3] This Court affirmed the Judgment of Sentence. **Commonwealth v. Clary**, 820 A.2d 702 (Pa. Super. 2003) (unpublished memorandum).

On March 22, 2016, Appellant filed a Petition pursuant to the Post Conviction Relief Act ("PCRA") asserting that his LWOP sentence was unconstitutional under **Miller** and **Montgomery**. The PCRA court granted relief, vacated Appellant's sentence, and scheduled the case for resentencing.

A three-day resentencing hearing commenced on May 7, 2018. The Commonwealth sought a LWOP sentence. The Commonwealth presented testimony from, *inter alia*, Detective Dillon, with whom Appellant had interacted when he was 16 years old. The Commonwealth also presented testimony from an expert in gang affiliation in rebuttal.

On May 9, 2018, after providing a thorough review of the applicable sentencing factors, the court determined that Appellant was not permanently incorrigible and declined to impose a LWOP sentence. The court resentenced Appellant to a term of 42 years to life imprisonment for his First-Degree Murder conviction, a consecutive sentence of 6 to 12 years of imprisonment for his Attempted Murder conviction; and a consecutive sentence of 7 years of probation for a gun violation charge. Thus, the court sentenced him to an

---

[3] The court also imposed a consecutive sentence of 6 to 12 years of imprisonment for his Attempted Murder conviction; and a consecutive sentence of 7 years of probation for a gun violation charge.

aggregate term of 48 years' to life imprisonment, followed by 7 years' probation.

Appellant filed a Post-Sentence Motion, which the trial court denied.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

## Issues Raised

Appellant raises the following four issues on appeal, which we have reordered for ease of disposition:

1. Did the sentencing court abuse its discretion in allowing the Commonwealth to present expert testimony regarding gang affiliation and activity where no expert report or other notice was provided to the defense and [Appellant's] gang activity was one of the critical factors that shaped the court's decision?

2. Did the sentencing court abuse its discretion in denying defense counsel the right to cross-examine a Commonwealth witness on issues of [Appellant's] interactions with police where "the ability to navigate the system" is one of the enumerated factors that must be considered in **Miller** and the sentencing court erroneously found that [Appellant] was able to navigate the system?

3. Did the sentencing court abuse its discretion in imposing a manifestly excessive and unreasonable sentence where the court failed to follow the mandates of **Miller**, **Montgomery**, and **Batts**?

4. Is the sentence imposed an illegal sentence as it is a *de facto* life sentence when the court found that [Appellant] was not permanently incorrigible?

Appellant's Br. at 3.

### Issue 1: Rebuttal Testimony

Appellant's first issue challenges an evidentiary ruling. The admissibility of evidence lies "within the sound discretion of the trial court, and a reviewing

court will not reverse the trial court's decision absent a clear abuse of discretion." ***Commonwealth v. Young***, 989 A.2d 920, 924 (Pa. Super. 2010) (citations omitted). ***See***, ***e.g.***, ***Commonwealth v. Feflie***, 581 A.2d 636, 643 (Pa. Super. 1990) (noting that the admission of rebuttal testimony is within the discretion of the trial court). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Nypaver***, 69 A.3d 708, 716 (Pa. Super. 2013) (citations omitted).

Appellant asserts that the trial court abused its discretion in permitting the Commonwealth to present as a rebuttal witness a gang expert, Lieutenant Eric Echevarria, when the Commonwealth failed to disclose this witness to Appellant in violation of Pa.R.Crim.P. 573. Appellant's Br. at 60.

Pa.R.Crim.P. 573(B)(1) outlines the Commonwealth's mandatory obligation to disclose certain evidence to a defendant, including exculpatory evidence, inculpatory statements, and tangible evidence. ***See*** Pa.R.Crim.P. 573(B)(1). However, our rules contain no "provision which requires the Commonwealth to disclose rebuttal witnesses[.]" ***Feflie***, ***supra*** at 643.[4] Further, we have opined that it is impossible for the Commonwealth "to

_____

[4] ***Feflie*** discusses Pa.R.Crim.P. 305, the identical predecessor to Rule 573. ***Commonwealth v. Burke***, 781 A.2d 1136, 1139 n.4 (Pa. 2001).

provide the defense with a complete list of every possible witness who might be called in rebuttal, since plans for such rebuttal obviously cannot be finalized until the defense is presented." **Commonwealth v. Oliver**, 379 A.2d 309, 313 (Pa. Super. 1977). **See also Commonwealth v. Novasak**, 606 A.2d 477, 487 (Pa. Super. 1992) (quoting **Commonwealth v. Thiel**, 470 A.2d 145, 148 (Pa. Super. 1983) ("[W]e cannot expect the Commonwealth to anticipate the materiality of all possible rebuttal evidence[.]")).

In this case, Appellant presented testimony from John Hepburn, Ph.D., an expert in sociology, corrections, and "security threat group management," including organized gang members. Dr. Hepburn interpreted evidence relevant to whether Appellant continued to act as a gang member in prison. N.T. Resentencing, 5/9/18, at 20-21. On cross-examination, the Commonwealth questioned Dr. Hepburn on Appellant's classification as "H-5," and asked him to interpret symbols on a letter from a gang member as well as a list of names and addresses on a yellow piece of paper. **Id.** at 56, 75, 84-86. Dr. Hepburn testified that the H-5 classification typically means mid-level, but did not know the exact classification relative to Appellant's alleged gang. **Id.** at 56. Dr. Hepburn could not interpret the symbols on the letter and did not know if the list of names was a roster of gang members. **Id.** at 75, 84-86.

In rebuttal, the Commonwealth called Lieutenant Detective Echevarria as an expert witness to testify regarding gang activity, including gang

language. Appellant's counsel objected, arguing that the Commonwealth should have informed him of the rebuttal expert. The court overruled the objection and permitted Detective Echevarria to testify. He testified in detail about the H-5 classification, interpreted the symbols on the letter that the Commonwealth had shown to Dr. Hepburn, opined as to Appellant's status in the gang based on those symbols, and identified the yellow paper as a list of gang members and their hierarchy. *Id.* at 116-19, 121-22.

Following our review, we conclude that the sentencing court did not abuse its discretion in permitting the rebuttal testimony of Detective Echevarria. Appellant has presented no authority to support his claim that the Commonwealth was required to disclose the names of its rebuttal witnesses. As the resentencing court concluded, the Commonwealth could not have known whether it needed to produce a rebuttal witness until after Appellant's defense experts completed their testimony. Trial Ct. Op. at 35. *See Feflie*, *supra* at 643 (concluding the Commonwealth was not required to disclose witnesses rebutting prison procedure and alibi evidence testimony); *Oliver*, *supra* at 313 (concluding the Commonwealth complied with the rules of discovery where it disclosed all its witnesses, except some called only on rebuttal). Accordingly, this claim is meritless.

### Issues 2-4: Sentencing

Before we address Appellant's specific issues, each of which references *Miller* and its progeny, we provide the following background.

### *Miller*'s Applicability and Appellate Review

In **Miller**, the U.S. Supreme Court held that it was unconstitutional to impose mandatory LWOP sentences for defendants who committed their crimes while under the age of 18. **Miller**, 567 U.S. at 465. The Court nonetheless opined that a LWOP sentence is still a viable sentence for "the rare juvenile offender whose crime reflects irreparable corruption," and a judge or jury must consider individualized characteristics and circumstances, including an offender's youth and attendant characteristics, before imposing this harshest possible penalty. **Id.** at 479-80, 483, 489. In **Montgomery**, the U.S. Supreme Court held that its decision in **Miller, supra**, applies retroactively. **Montgomery**, 136 S.Ct. at 732. The Court "expressly left it to the States to determine how the holding in **Miller** was to be implemented in state court proceedings." **Commonwealth v. Batts**, 163 A.3d 410, 432 (Pa. 2017) ("**Batts II**") (citation omitted).

In **Batts II**, our Supreme Court concluded "that to effectuate the mandate of **Miller** and **Montgomery**," it would provide a procedural safeguard to ensure that LWOP sentences "are meted out only to 'the rarest of juvenile offenders' whose crimes reflect 'permanent incorrigibility'" by recognizing a presumption against the imposition of a LWOP sentence for a juvenile offender. **Batts II**, 163 A.3d at 415-16. Therefore, if the Commonwealth seeks a LWOP sentence for a juvenile offender, it must prove beyond a reasonable doubt that the offender "exhibits such irretrievable

depravity that rehabilitation is impossible." *Id.* at 455 (quoting *Montgomery*, *supra* at 733) (emphasis omitted). If the Commonwealth satisfies its burden of proof, the sentencing court has discretion to impose a LWOP sentence upon the juvenile offender. *Batts II*, *supra* at 460.

When the Commonwealth requests a sentence of LWOP, the sentencing court must consider the *Miller* and Section 1102.1(d) factors[5] on the record, before imposing a sentence. *Commonwealth v. Machicote*, 206 A.3d 1110, 1120 (Pa. 2019); *Batts II*, *supra* at 459-60. If the court imposes the requested LWOP sentence, it "must find that the juvenile offender is permanently incorrigible and that rehabilitation would be impossible." *Batts II*, *supra* at 459.

However, if, as here, the court sentences "a juvenile offender to a life **with the** possibility of parole, traditional sentencing considerations apply[,]" and the court considers the factors set forth in 42 Pa.C.S. § 9721(b). *Id.* at

---

[5] *Miller* requires examination of the following factors related to youth and its attendant characteristics ("*Miller* factors"):

> "[A]t minimum it should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Batts II*, *supra* at 421 n.5 (citations omitted).

460 (citation omitted, emphasis added). Section 9721(b) provides that the court shall fashion a sentence "that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S § 9721(b).

Thus, where, as here, the sentencing court rules in a defendant's favor by declining the Commonwealth's request to sentence the appellant to LWOP, on appeal, we need not review whether the court properly considered the **Miller** factors. Rather, we review the appellant's sentence as we would any other sentence imposed pursuant to Section 9712(b). **See Batts II**, **supra** at 460.

### Issue 2: Scope of Cross-Examination

Appellant contends that the sentencing court abused its discretion by precluding his counsel from questioning Detective Dillon about interactions with Appellant when he was 16 years old, a line of questioning relevant to one of the **Miller** factors, *i.e.*, Appellant's ability to deal with police. Appellant's Br. at 54.

In addressing the Commonwealth's request to impose a LWOP sentence, the sentencing court correctly considered evidence regarding the **Miller** factors. The sentencing court, however, determined that Appellant was not permanently incorrigible and declined the Commonwealth's request to impose a LWOP sentence. The sentencing court instead sentenced Appellant based on

the factors set forth in 42 Pa.C.S. § 9721(b). It is those factors we must use to evaluate Appellant's sentence.

Appellant's claim that the sentencing court erred in not permitting Appellant's counsel to question Detective Dillon about one of the **Miller** factors is moot because the sentencing court ruled in Appellant's favor and did not impose a LWOP sentence. Thus, the sentencing court's failure to consider evidence regarding one of the **Miller** factors did not harm Appellant's position that the sentencing court should not impose a LWOP sentence. Additionally, we conclude that the sentencing court did not abuse its discretion in limiting the scope of Appellant's cross-examination of Detective Dillon because our review of the record supports the court's conclusion that the precluded questioning would have been irrelevant or cumulative of facts already established in the record. **See** Trial Ct. Op., dated 12/12/18, at 25-26.

### Issue 3: Excessive Sentence

Appellant challenges the discretionary aspects of his sentence, arguing that the court improperly analyzed certain mitigating sentencing factors to impose a manifestly excessive and unreasonable sentence. Appellant's Br. at 64.

Challenges to the discretionary aspects of sentencing are not automatically reviewable as a matter of right. **Commonwealth v. Hunter**, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue, we must determine: (1) whether appellant has

filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief sufficiently addresses the challenge in a statement included pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

To properly preserve an issue challenging the discretionary aspects of sentencing, a defendant must object and request a remedy at sentencing, or raise the challenge in a post-sentence motion. *Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa. Super. 2004). The Pennsylvania Rules of Criminal Procedure specifically caution defendants that, when filing post-sentence motions, "[a]ll requests for relief from the trial court shall be stated with specificity and particularity[.]" Pa.R.Crim.P. 720(B)(1)(a). *See Commonwealth v. Tejada*, 107 A.3d 788, 798-99 (Pa. Super. 2015) (noting that the trial court must be given the opportunity to reconsider its sentence either at sentencing or in a post-sentence motion). *See, e.g.*, *Commonwealth v. Mann*, 820 A.2d 788, 793-94 (Pa. Super. 2003) (concluding that the defendant waived his discretionary aspects of sentencing claim regarding the sentencing court's failure to state the reasons for his sentence on the record where the defendant's post-sentence motion only argued that his sentence was unduly severe and that the trial court abused its discretion under the sentencing code).

Appellant contends that the court erred in concluding that: (1) Appellant did not have a diminished capacity to deal with police; (2) Appellant did not have diminished culpability; and (3) Appellant was never sexually abused. Appellant's Br. at 66-75. He also contends that the court misinterpreted Dr. Hepburn's testimony regarding lifetime gang affiliation. *Id.* Additionally, Appellant argues that the court abused its discretion in resentencing him by failing to consult Section 1102.1[6] as an "essential starting point." *Id.* at 50-51.

Appellant properly preserved only his challenge to the court's consideration of the evidence regarding his ability to deal with police when he raised it in his Post-Sentence Motion.[7] Because Appellant filed a timely Notice of Appeal and included a Statement of Reasons Relied Upon for Allowance of Appeal pursuant to Pa.R.A.P. 2119(f), we next address whether Appellant has raised a substantial question for our review.

---

[6] Our Supreme Court noted that section 1102.1 will "help frame the exercise of judgment by the court in imposing a sentence and may provide an essential starting point. . . that must be respected and considered" when determining the appropriate minimum sentence for a juvenile convicted of first-degree murder prior to the *Miller* decision." *Commonwealth v. Batts*, 163 A.3d 410, 458 (Pa. 2017) (citation and internal quotations omitted).

[7] Appellant did not raise his remaining arguments at sentencing or in his Post-Trial Motion. Accordingly, they are waived. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1042-43 (Pa. Super. 2013) (*en banc*) (concluding substantial question waived for failing to raise it at sentencing or in post-sentence motion).

Whether a substantial question has been raised regarding a discretionary sentence is determined on a case-by-case basis. **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Id.** (citation and internal quotation marks omitted).

Specifically, this Court has held that

the Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.,* the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm (*e.g.,* the sentence is unreasonable or the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range).

**Commonwealth v. Goggins**, 748 A.2d 721, 727 (Pa. Super. 2000).

This Court has consistently held that an allegation that a sentencing court "did not adequately consider certain factors does not raise a substantial question that the sentence was inappropriate." **Commonwealth v. Cruz-Centeno**, 668 A.2d 536, 545 (Pa. Super. 1995) (citation and internal quotation marks omitted). **See also Commonwealth v. Rhoades**, 8 A.3d 912, 918-19 (Pa. Super. 2010) (stating "an allegation that the sentencing court failed to consider mitigating factors generally does not raise a substantial

question for our review"); ***Commonwealth v. Williams***, 562 A.2d 1385, 1388 (Pa. Super. 1989) (*en banc*) (concluding that an allegation that the sentencing court did not adequately consider various factors is, in effect, a request that this court substitute its judgment for that of the lower court in fashioning a defendant's sentence).

In the instant case, Appellant fails to reference the sentencing guidelines at all, the particular provision of the Code violated, or the "fundamental norm the sentence violates and the manner in which it violates that norm." Appellant, rather, avers only that the lower court's analysis of a potential mitigating factor renders his sentence excessive and unreasonable. Thus, Appellant has failed to raise a substantial question. ***See Rhoades***, ***supra*** at 918-19; ***Williams***, ***supra*** at 1388. Accordingly, we decline to review Appellant's discretionary aspects of sentencing challenge.

### Issue 4: *De Facto* LWOP

In his final issue, Appellant raises a challenge to the legality of his sentence. He asserts that, even though the court did not impose a LWOP sentence, the trial court imposed an impermissible *de facto* life sentence in violation of ***Miller***.[8] Appellant's Br. at 76.

A claim challenging a sentencing court's legal authority to impose a particular sentence presents a question regarding the legality of the sentence.

---

[8] We note that Appellant argues only that the court improperly imposed a *de facto* life sentence. He does not argue that the court abused its discretion in imposing consecutive sentences.

*Commonwealth v. Henandez*, ___ A.3d ___, 2019 WL 3940215, at \*4 (Pa. Super. filed Aug. 21, 2019). "The determination as to whether a trial court imposed an illegal sentence is a question of law; an appellate court's standard of review in cases dealing with questions of law is plenary." *Id.* (citation omitted).

A trial court may not impose a term-of-years sentence on a juvenile convicted of homicide that equates to a *de facto* LWOP sentence unless it finds, beyond a reasonable doubt, that the juvenile is incapable of rehabilitation. *Miller*, 56 U.S. at 479; *Commonwealth v. Foust*, 180 A.3d 416, 433 (Pa. Super. 2018). However, "defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence." *Foust*, *supra* at 434 (citations omitted). Thus, "we must consider the individual sentences, not the aggregate, to determine if the trial court imposed a term-of-years sentence which constitutes a *de facto* LWOP sentence." *Id.* at 438.

This court has distinguished between individual term-of-years sentences which constitute *de facto* LWOP sentences and those that do not. *Foust*, *supra* at 438. In *Foust*, this Court concluded that a 150–year sentence is a *de facto* LWOP sentence and a 30 years' to life sentence does not constitute a *de facto* LWOP sentence. *Id.*

For sentences that fall between the clearly constitutional and unconstitutional parameters, we have concluded that a sentence is not a *de facto* LWOP sentence where there is "some meaningful opportunity to obtain

release based on demonstrated maturity and rehabilitation." ***Commonwealth v. Bebout***, 186 A.3d 462, 467 (Pa. Super. 2018) (citation omitted). Thus, "it must at least be plausible that one could survive to the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits." ***Id***. at 468 (emphasis omitted). If there is no meaningful opportunity for parole, the sentence constitutes a *de facto* LWOP sentence. ***Id.*** We, therefore consider the age the appellant would be eligible for parole to determine whether the new sentence is the functional equivalent of LWOP. ***Id.***

In ***Commonwealth v. Anderson***, ___ A.3d ___, 2019 WL 6335390, at *7-8 (Pa. Super. filed Nov. 27, 2019), a post-***Miller*** case, the appellant received a sentence of 50 years' to life imprisonment upon resentencing. 2019 WL 6335390, at *2. Because Anderson was 17 years old at the time he began serving his sentence, he would, thus, be eligible for parole at age 67. ***Id.*** at *6. We, therefore, concluded that his sentence was not the functional equivalent of LWOP. ***Id.*** at *7. ***See also Bebout***, ***supra*** at 468 (concluding the appellant's 45 years' to life sentence in which he would be eligible for parole at the age of 60 was not *de facto* LWOP); ***Commonwealth v. Lekka***, 210 A.3d 343, 357-58 (Pa. Super. 2019) (concluding that because the appellant's term of 45 years' to life imprisonment rendered him eligible for parole at the age of 62, it was not a *de facto* LWOP sentence); ***Foust***, supra at 438, 441 (concluding that the appellant's two consecutive 30 year to life sentences were not a *de facto* LWOP sentence and noting that even

considering Appellant's aggregate sentence, he had a chance of being released into society in his 70s).

In the instant case, the resentencing court imposed a term of 42 years' to life imprisonment for Appellant's first-degree murder conviction, a consecutive term of 6 to 12 years of imprisonment for his Attempted Murder conviction; and a consecutive term of 7 years of probation for a gun violation charge.

None of the sentences standing alone are *de facto* life sentences. Because Appellant was 16 years old at the time he began serving his sentence, he will be eligible for parole for his first-degree murder conviction when he is 58 years old. Since Appellant will have a "meaningful opportunity to obtain release," we conclude that Appellant's sentence cannot be considered a *de facto* LWOP sentence. Thus, Appellant's claim that his sentence is illegal is without merit.

Because there is no merit to Appellant's claims, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/2/2020

- 18 -