J-S32025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                         :              PENNSYLVANIA

                    Appellee        :

                       :
                 v.                :

                       :

DASHAAN R. SMITH             :

                       :

                Appellant    :          No. 1623 EDA 2019

Appeal from the Judgment of Sentence Entered April 26, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003773-2014,
CP-51-CR-0008433-2014

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                         :              PENNSYLVANIA

                    Appellee        :
                 v.                :

                       :

                       :

DASHAAN R. SMITH             :

                       :

                Appellant    :          No. 1626 EDA 2019

Appeal from the Judgment of Sentence Entered April 26, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003773-2014,
CP-51-CR-0008433-2014

BEFORE:  KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                   **FILED AUGUST 31, 2020**

Appellant, Dashaan R. Smith, appeals *nunc pro tunc* from the judgment

of sentence entered in the Philadelphia County Court of Common Pleas,

_____

[*] Retired Senior Judge assigned to the Superior Court.

following his jury trial convictions for robbery and conspiracy to commit robbery.[1] We affirm.

In its opinion, the trial court accurately summarizes the relevant facts of this case as follows:

> On March 3, 2014, at about 10 p.m., victim D.E. exited a SEPTA trolley on 47th Street at its intersection with Woodland Avenue in the City and County of Philadelphia. After [D.E.] departed the trolley, he proceeded northbound on the west side of 47th Street towards his home on Chester Avenue. D.E. carried with him a bag of groceries from Trader Joe's, his brief case, and his cell phone. As D.E. approached Reinhard Street and its intersection with 47th Street—approximately one block south from Kingsessing Avenue—[D.E.] peered up from his cell phone, upon which he was playing a game, and observed three males wearing hoods near the intersection of Kingsessing Avenue approximately one-half block to the north in front of him. Two of the men were on the west side of the intersection, while the other suspect was located on the east side of the street. As D.E. reached the corner of Kingsessing Avenue, the three individuals, in concert, ran towards D.E. Before approaching D.E., at a distance of around fifteen feet, [the three individuals] placed masks over their faces. One of the individuals brandished a silver firearm and pointed the firearm in D.E.'s direction. The three individuals took, without permission, D.E.'s cell phone, wallet, keys, briefcase and groceries.
>
> After the items were taken, the three individuals ran westbound on Kingsessing Avenue. D.E. then immediately ran back to his home and was forced to use his wife's cell phone to call the police. When the police arrived, they drove D.E. around the neighborhood to see if [he] could identify any persons that matched the description of the suspects. D.E. described the suspects to police as three young, African American males with a height of at least six-feet and two inches, with the exception of one individual D.E. stated was

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii) and 903, respectively.

two or three inches taller. D.E. further described the suspects as having a light build, [and that] each suspect was under 200 pounds.

On March 9, 2014, at around 10 p.m., victims D.J. and his wife R.L. were waiting for the bus at the corner of 45th Street and Spruce Street in the City and County of Philadelphia. At that time, both victims were using their cell phones and observed two individuals approach them from behind. One of the individuals that approached the victims displayed and pointed a silver firearm at D.J.'s chest and asked them for their possessions. D.J. gave the two individuals around $30.00 in currency and a cell phone; and his wife, R.L., gave [them] her purse which contained around $40.00 in currency and a cell phone.

On March 11, 2014, Officer Russel Valenza of the Philadelphia Police Department was assigned basic patrol from…Baltimore Avenue to Woodland Avenue, in between 45th Street and 49th Street. Officer Valenza was instructed by his superiors to work in plain clothes because of the numerous robberies that had been reported in the area. While Officer Valenza walked northbound [on] 47th Street, approaching its intersection with Springfield Avenue, Officers Mitchell and Valenza observed a male that fit the description for a robbery from the previous night. While travelling west from 48th Street, the described suspect approached Officer Valenza and placed a silver handgun to the right side of Officer Valenza's head and demanded he "give it up." At that time, Officer Valenza was able to strike and remove the firearm from the suspect's hand and subdued the suspect until he was placed into custody. The male that attempted to rob Officer Valenza was later identified as David Tingle.

On March 11, 2014, David Tingle was arrested and provided statements to officers admitting his involvement in multiple robberies, including the robbery of Officer Valenza, and the robbery of the "Chinese girl," victim R.L., at 4500 Spruce Street. At that time, Mr. Tingle was in possession of R.L.'s white cell phone, which he told police "was taken from the Chinese girl and given to him by his cousins." Mr. Tingle further implicated his cousins, Quinzel Smith and Appellant, and told officers he—and his cousins—lived at 4932

- 3 -

Kingsessing Avenue, which prompted Philadelphia Police to execute a search warrant at that address. On March 15, 2014, when officers searched the residence at 4932 Kingsessing Avenue, the officers located a motorcycle mask, multiple cell phones, D.E.'s briefcase, an OtterBox cell phone case, a wallet with no cash or credit cards (the driver's license was still present in the wallet), and other items, including the same grocery bag D.E. carried the night he was robbed.

On March 15, 2014, Officer Craig Fife and Detective Antonini of the Philadelphia Police went to D.E.'s home to conduct photo arrays. At that time, victim D.E. was able to immediately identify Appellant and Quinzel Smith as the suspects from the night he was robbed, as well as each individual's role in the robbery. On March 20, 2014, victim D.J. spoke with detectives and reviewed photographic arrays. Victim D.J. was subsequently ordered to attend a lineup by a judge. On May 7, 2014, the lineup was held with both victims—D.J. and R.L.—from the March [9], 2014 robbery present. During the lineup, victim R.L. positively identified Appellant and victim D.J. positively identified Quinzel Smith.

(Trial Court Opinion, filed August 19, 2019, at 1-4) (internal citations to record omitted).

Procedurally, at Docket No. 3773-2014, the Commonwealth charged Appellant with, *inter alia*, one count each of robbery, conspiracy to commit robbery, and possession of an instrument of crime ("PIC") relating to the March 3, 2014 robbery of D.E. At Docket No. 8433-2014, the Commonwealth charged Appellant with, *inter alia*, two counts of robbery and one each of conspiracy to commit robbery and PIC relating to the March 9, 2014 robberies of D.J. and R.L. The trial court consolidated the cases upon the Commonwealth's request. Appellant proceeded to a joint jury trial at both

docket numbers with his brother, Quinzel Smith.

At trial, Detective Theodore Manko, *inter alia*, testified on behalf of the Commonwealth. (N.T. Trial, 2/10/16, at 58-73). On direct examination, Detective Manko testified that he authored the search warrant affidavit and executed the warrant for the residence of Appellant and his two cohorts. On cross-examination, co-defendant's counsel asked if Mr. Tingle was the "main source of information" for the search warrant affidavit, and Appellant's counsel asked whether Mr. Tingle "became the focus of the investigation when he was arrested." (*Id.* at 66, 70). The detective responded in the affirmative to both questions. On redirect, the Commonwealth requested that Detective Manko clarify Mr. Tingle's role in the investigation. Detective Manko explained that Mr. Tingle "gave a statement about committing the robberies and did it with his cousins." (*Id.* at 72). Appellant's counsel objected on the basis of hearsay. After a sidebar with counsel, the court discontinued testimony and adjourned trial for the day. (*Id.* at 73). When trial resumed the next day, Appellant's counsel reiterated his objection to the introduction Mr. Tingle's statements as hearsay. (N.T. Trial, 2/11/16, at 3). The court overruled the objection. (*Id.* at 4). Detective Manko then read into the record an excerpt from the search warrant affidavit that summarized information Mr. Tingle had provided to police. (*Id.* at 5).

On February 12, 2016, the jury convicted Appellant of one count of conspiracy to commit robbery at Docket No. 3773-2014. At Docket No. 8433-

2014, the jury convicted Appellant of two counts of robbery and one count of conspiracy to commit robbery.

The court conducted a joint sentencing hearing for both Appellant and his co-defendant brother on April 26, 2016. During sentencing, the Commonwealth indicated the offense gravity score ("OGS") for Appellant's conspiracy convictions was ten. (N.T. Sentencing, 4/26/16, at 14-15). Applying that OGS, the court sentenced Appellant to an overall aggregate term of six (6) to twelve (12) years' incarceration across both docket numbers. Appellant filed no post-sentence motions.

On May 21, 2019, the court reinstated Appellant's direct appeal rights *nunc pro tunc*. On May 31, 2019, Appellant filed two notices of appeal, each containing both underlying trial court docket numbers. The trial court ordered Appellant on June 10, 2019, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on June 28, 2019. On October 28, 2019, this Court consolidated the appeals at Appellant's request. Additionally, Appellant filed in this Court applications to amend his notices of appeal to comply with **Commonwealth v. Creese**, 216 A.3d 1142 (Pa.Super. 2019); this Court granted the application on June 30, 2020.[2]

---

[2] This Court recently overruled **Creese** to the extent that it required the Superior Court to quash appeals when an appellant files multiple notices of appeal and each notice lists each of the underlying trial court docket numbers. **See Commonwealth v. Johnson**, ___ A.3d ___, 2020 PA Super 164 (filed July 9, 2020) (*en banc*). Thus, Appellant's appeals are properly before us in any event.

Appellant raises the following issues for our review:

Whether the trial court erred by admitting the testimonial statements of a third-party witness who…Appellant had no opportunity to cross examine in violation of Appellant's 6th Amendment right to confront the witness against him?

Whether the trial court abused its discretion when it imposed sentences outside the sentencing guidelines for three counts of conspiracy to commit robbery after applying an erroneous offense gravity score and not stating any basis for sentencing Appellant outside the standard guidelines?

Whether the trial court abused its discretion when it joined two separate informations, each of which involves robberies of dissimilar facts, for trial?

(Appellant's Brief at 4).

In his first issue, Appellant argues Mr. Tingle's statements in the search warrant affidavit are testimonial, and he had no opportunity to question Mr. Tingle about those statements. Appellant avers the admission of Mr. Tingle's statements violated Appellant's Sixth Amendment Right of Confrontation under the federal constitution. Appellant adds that he did not open the door to the introduction of Mr. Tingle's statements at trial. Appellant concludes this Court should vacate the convictions and remand for a new trial on this basis. We disagree.

Preliminarily, to preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal. *Commonwealth v. May*, 584 Pa. 640, 887 A.2d 750 (2005), *cert. denied*,

549 U.S. 832, 127 S.Ct. 58, 166 L.Ed.2d 54 (2006) (reiterating absence of specific and contemporaneous objection to error waives issue on appeal); ***Commonwealth v. Arroyo***, 555 Pa. 125, 723 A.2d 162 (1999) (explaining if ground upon which objection is based is specifically stated, all other reasons for its exclusion are waived).. Additionally, "the law is clear that issues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the first time on appeal." ***Commonwealth v. Cline***, 177 A.3d 922, 927 (Pa.Super. 2017), *appeal denied*, 646 Pa. 735, 187 A.3d 210 (2018). ***See also Commonwealth v. Charleston***, 16 A.3d 505 (Pa.Super. 2011), *appeal denied*, 612 Pa. 696, 30 A.3d 486 (2011) (stating issues cannot be raised for the first time on appeal); Pa.R.A.P. 302(a).

Instantly, during Detective Manko's trial testimony Appellant objected to the introduction of Mr. Tingle's statements in the search warrant affidavit on the grounds of hearsay, and the court held the issue in abeyance until the following day. When the court addressed Appellant's objection the next day, Appellant repeated his hearsay objection. In both instances, Appellant made no mention of the Confrontation Clause. Therefore, Appellant's Confrontation Clause claim is waived. ***See May, supra***; ***Cline, supra***.

In his second issue, Appellant argues the sentencing court imposed the sentences for his conspiracy convictions based upon an incorrect OGS. Appellant avers his conspiracy sentences exceed the sentencing range for

conspiracy under the correct OGS. Appellant submits he preserved his sentencing claim in a post-sentence motion, but that the court lost the motion. Appellant concludes this Court should remand for resentencing. We disagree.

As presented, Appellant's claim challenges the discretionary aspects of sentencing. *See Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa.Super. 2016) (explaining claim that sentencing court applied incorrect OGS challenges discretionary aspects of sentencing) (citing *Commonwealth v. Lamonda*, 52 A.3d 365 (Pa.Super. 2012) (*en banc*), *appeal denied*, 621 Pa. 677, 75 A.3d 1281 (2013)). Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000).

> Prior to reaching the merits of a discretionary sentencing issue, we must determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief sufficiently addresses the challenge in a statement included pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Clary*, 226 A.3d 571, 579 (Pa.Super. 2020).

"To preserve issues concerning the discretionary aspects of sentencing, a defendant must raise them during sentencing or in a timely post-sentence motion." *Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa.Super. 2008), *appeal denied*, 600 Pa. 728, 963 A.2d 467 (2008). Objections to the discretionary aspects of a sentence are generally waived if they are not raised

at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing. **Commonwealth v. Mann**, 820 A.2d 788 (Pa.Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

Instantly, Appellant concedes on appeal that he did not object during the sentencing hearing to the court applying an OGS of ten to his conspiracy convictions. The record contains no post-sentence motions and the trial court docket sheets include no entries indicating Appellant filed post-sentence motions. Additionally, Appellant failed to support his claim by providing this Court in a reproduced record or as an attachment to his brief a copy of the post-sentence motion he alleges he filed. Indeed, the trial court opinion indicates that Appellant filed no post-sentence motions in this case. (**See** Trial Court Opinion at 13-14).[3] Therefore, Appellant failed to preserve his discretionary aspects claim, and his second issue merits no relief. **See Clary, supra**; **Mann, supra**.

In his third issue, Appellant argues consolidation of his cases unduly

---

[3] At sentencing, Appellant's co-defendant brother indicated he wished to file post-sentence motions, but Appellant made no representations of his intent to file any. (N.T. Sentencing, 4/26/16, at 35-36). The public criminal docket sheets for co-defendant's related case show co-defendant filed post-sentence motions, but the court entered no order denying the motions. Instead, the docket entries for Appellant's case show an order denying post-sentence motions. Although an order denying post-sentence motions appears on this record, the record for Appellant's case does not contain and the criminal docket sheets do list any post-sentence motions filed. Thus, the record suggests the trial court mistakenly entered the order denying post-sentence motions in Appellant's case instead of co-defendant's case, as the men have the same last name and proceeded jointly at trial and sentencing.

prejudiced him at trial. Appellant contends the robberies were not part of a common scheme or design. Appellant claims the underlying crimes were not sufficiently similar, and differ in the number of perpetrators, as well as the assailants' level of aggression and use of face masks. Appellant submits the jury was unable to consider the robberies as discrete events. Appellant suggests the introduction of evidence of each crime caused the jury to believe he had a propensity to commit robberies. Appellant concludes this Court should vacate and remand for separate trials. We disagree.

Whether "separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Cousar*, 593 Pa. 204, 225, 928 A.2d 1025, 1037 (2007), *cert. denied*, 553 U.S. 1035, 128 S.Ct. 2429, 171 L.Ed.2d 235 (2008).

The Pennsylvania Rules of Criminal Procedure govern the joinder and severance of offenses as follows:

> **Rule 582. Joinder—Trial of Separate Indictments or Informations**
>
> **(A) Standards**
>
> (1) Offenses charged in separate indictments or informations may be tried together if:
>
> > (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

- 11 -

> (b)  the offenses charged are based on the same act
> or transaction.

Pa.R.Crim.P. 582(A)(1).

### Rule 583.  Severance of Offenses or Defendants

> The court may order separate trials of offenses or
> defendants, or provide other appropriate relief, if it appears
> that any party may be prejudiced by offenses or defendants
> being tried together.

Pa.R.Crim.P. 583.  Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. *Commonwealth v. Lauro*, 819 A.2d 100 (Pa.Super. 2003), *appeal denied*, 574 Pa. 752, 830 A.2d 975 (2003).  Reading these rules together, our Supreme Court established the following test for deciding if a court should join or sever charges:

> [1] whether the evidence of each of the offenses would be
> admissible in a separate trial for the other; [2] whether such
> evidence is capable of separation by the jury so as to avoid
> danger of confusion; and, if the answers to these questions
> are in the affirmative, [3] whether the defendant will be
> unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Collins*, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998).

Evidence of other crimes is not admissible solely to show the defendant's bad character or propensity to commit crimes.  *Id.*  Nevertheless, evidence of other crimes is admissible to demonstrate:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial.

*Id.* at 55, 703 A.2d at 422-23. "Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts." *Id.* at 55, 703 A.2d at 423.

"Factors to be considered to establish similarity are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." *Commonwealth v. Dozzo*, 991 A.2d 898, 902 (Pa.Super. 2010), *appeal denied*, 607 Pa. 709, 5 A.3d 818 (2010). "Where a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence." *Collins, supra* at 56, 703 A.2d at 423.

Instantly, the trial court addressed Appellant's consolidation claim in its opinion as follows:

> Appellant's offenses were properly consolidated because there exists a logical connection between the crimes [such] that proof of one crime will tend to show Appellant is the person who committed the other crime. …[I]n the first offense: On March 3, 2014, at approximately 10 p.m. [D.E.] was walking on 47th Street and at its intersection with Kingsessing Avenue [and] was approached by three African American males—with varying heights between 6'2" and 6'4"—wearing dark hooded clothing and masks and robbed using [a] silver firearm. The victim was robbed of his cell phone, wallet, brief case, and groceries. The victim in the first offense positively identified Appellant as one of the offenders through a photo lineup…. In the second offense:

- 13 -

on March 9, 2014, at approximately 10 p.m., two victims [were] waiting for a bus at the intersection of 45th and Spruce Streets, [when they] were approached by two African American males—one wearing a hooded sweatshirt—and robbed of…a handbag, cash and cell phones after one offender displayed a silver firearm. At trial, [D.J.] was able to positively identify Appellant as one of the offenders who committed the crime. Further, there was a stipulation at trial that had [R.L.] testified that she would testify: (1) she attended the lineup conducted by Philadelphia Police; and (2) she also positively identified Appellant from a photo [array].

…[T]here are numerous consistencies between the two present offenses which draw a logical connection that Appellant, in committing one crime, likely committed the second crime. The first factor is the physical description of the offenders: the victim in the first offense stated each was at least six feet tall, while in the second offense [D.J.]…listed the suspect as 185 centimeters or just over six feet. In both crimes, the suspects were described as wearing hood[s]. [V]ictims in both crimes are consistent in their testimony that a silver firearm was used during the commission of the offense. Although the physical characteristics of the victims vary, a common thread exists between the two crimes because each involves persons vulnerable to attack: a person walking down a street or two victims waiting at a bus stop. The next factor is the offenses occurred only six days apart from one another…. The next connection between the two crimes is both offenses occurred around 10 p.m. at night. Finally, the first offense…and the second offense…occurred approximately six or seven blocks south and then two blocks west, or even within a half mile of each other.

The two cases involved contain substantial similarities and are probative of the identity of the perpetrator and of a common scheme, and each offense would have been admissible in a separate trial for the other. The crime pattern employed through the commission of each offense, and the considerable number of parallels between each offense indicates a great likelihood that both offenses were likely committed by…Appellant. Further, the jury was unlikely to have suffered any confusion between the

> evidence as the Commonwealth presented evidence of each crime separately; the Commonwealth went so far as presenting evidence of each crime on differing trial days. Appellant has failed to demonstrate any prejudice which resulted from the consolidation of his two crimes. Therefore, the joinder of the offenses was not an abuse of discretion.

(Trial Court Opinion at 16-18) (internal quotation marks and record citations omitted). We agree with the court's rationale.

The robberies occurred six days apart, in the same area of Philadelphia, and at the same time of night. In both instances, Victims were waiting at or had just left a public transportation stop and were using cell phones when the suspects accosted them. Each time, the assailants took Victims' cell phones, cash, and bags, and one of the aggressors pointed a silver gun at Victims. At least one attacker in both crimes wore a hood. All Victims positively identified Appellant at trial and/or in photo arrays and lineups.

The evidence of each robbery is sufficiently similar to establish a common scheme and the identity of Appellant as one of the aggressors. *See Collins, supra*; *Dozzo, supra*. Thus, the evidence of each robbery would be admissible in separate trials for each incident. *See Collins, supra*. Additionally, the jury was able to separate the evidence of the offenses, because the crimes involved different victims and occurred on different days at different locations. *See id.* The verdict also shows the evidence of both crimes did not confuse the jury, as the jury considered each incident separately and did not convict Appellant of robbery at Docket No. 3773-2014,

but did convict him of robbery at Docket No. 8433-2014. ***Id.*** Furthermore, the record does not show the evidence of both crimes unduly prejudiced Appellant, but indicates the Commonwealth introduced the evidence only to prove the elements of the charges Appellant faced in each case. ***Id.***; ***Lauro, supra***. Therefore, we discern no abuse of discretion in the court's consolidation of the cases. ***See Cousar, supra***. Accordingly, Appellant's final claim merits no relief, and we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/20