J-A07030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TODD ALAN KENDALL | : | |
| | : | |
| Appellant | : | No. 694 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 31, 2023
In the Court of Common Pleas of Wyoming County
Criminal Division at No(s):  CP-66-CR-0000267-2021

BEFORE:   STABILE, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: APRIL 26, 2024**

Todd Alan Kendall ("Kendall") appeals from his judgment of sentence for aggravated indecent assault without consent,[1] and his designation as a Sexually Violent Predator ("SVP").  We affirm.

In 2021, Kendall was arrested and charged with repeatedly raping and sexually abusing his girlfriend's daughter, C.B., when she was between five and ten years old.  In September 2022, Kendall entered an open guilty plea to the offense listed above.[2]  In his plea, Kendall admitted he lived with C.B's mother and C.B., C.B. called him "Dad," and on one occasion when C.B. was

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 3125(a)(1).

[2] The court *nol prossed* seven other charges related to Kendall's sexual abuse of C.B.  **See** N.T., 9/19/22, at 5-7, 32.

between five and ten years old, he had non-consensual sexual intercourse with her. *See id*. at 32-33. The court ordered the Sexual Offenders Assessment Board ("SOAB") to determine if Kendall met the criteria of an SVP. *See id*. at 22.

In February 2023, the court convened an SVP, and sentencing, hearing. Paula Brust ("Brust"), an SOAB evaluator who had conducted more than 1,500 SVP evaluations, testified as an SVP-classification expert. *See* N.T., 2/13/23, at 6-12. Brust testified the materials she reviewed in her assessment established that over a period of years Kendall touched C.B.'s breasts, put his penis in her mouth and vagina, and showed her pornography. *See id*. at 17. Those materials also reported Kendall sexually assaulted his sisters when they were between seven and nine years old and further in 2001, faced an accusation of sexually assaulting a child. *See id*. at 18. Brust testified she had reviewed the factors relevant to an SVP assessment, including Kendall's volunteered statement he failed a polygraph test concerning the 2001 sexual assault, and his admissions to touching C.B.'s breasts and bribing her to allow him to assault her. *See id*. at 21-22, 24-25. Brust found Kendall met the criteria of an SVP. *See id*. at 25-28. Kendall stated he wanted to be interviewed as part of the SVP determination. The court continued the hearing. *See id*. at 45.

The hearing resumed in March. Brust testified she attended a Zoom interview with Kendall and his attorney at which Kendall denied the abuse and blamed the victim's older sister for the charges. *See id*. at 8-9. Kendall claimed he pleaded guilty because he ran out of money. *See id*. at 9-10. Brust considered Kendall's interview and re-determined Kendall met the SVP criteria. *See id*. at 11-12. Based on the unrefuted evidence and Brust's report, the court found Kendall to be an SVP. *See id*. at 20.

The parties acknowledged that Kendall's offense had an offense gravity score of "12," he had no prior convictions, and the standard guidelines sentence called for forty-eight to sixty-six months' imprisonment. *See id*. at 33. In Kendall's allocution, he claimed the lack of money, not guilt, induced his plea. *See id*. at 35. The court conducted a colloquy and determined Kendall still wished to plead guilty. *See id*. at 37. After hearing C.B.'s and her sister's victim impact statements, *see id*. at 44-53, the court imposed an aggravated-range sentence of seventy-eight to two-hundred-and-forty months' imprisonment followed by three years' consecutive probation. *See id*. at 54-57.[3] The court explained it imposed an aggravated-range sentence because Kendall violated a duty of supervision and care to C.B., showed no

---

[3] Although the maximum sentence for a first-degree felony is twenty years, *see* 18 Pa.C.S.A. § 1103(1), a separate statute authorizes a consecutive probationary term following a mandatory term of imprisonment for certain sexual offenses. *See* 42 Pa.C.S.A. § 9718.5(a).

remorse, abused C.B. for multiple years, and, as the post-sentence investigation report ("PSI") stated, told C.B. he would kill her if she revealed the abuse. *See id*. at 56-57.

Kendall filed a petition for reconsideration of sentence, which the trial court denied. Kendall timely appealed. Kendall and the trial court complied with Pa.R.A.P. 1925.

Kendall submits the following issues for this Court's review:

> 1. Did the lower court commit an error of law in its sentences because they were based upon insufficient evidence?
>
> 2. Did the lower court err and abuse its discretion in its imposition of an unreasonable and excessive sentence?
>
> 3. Did the lower court err and abuse its discretion by failing to consider or give appropriate weight to the circumstances of the offense, [Kendall's] background, mitigating circumstances, and/or refusing to reduce the sentence imposed . . . and in finding [Kendall] to be a[n SVP]?

Kendall's Brief at 4 (unnecessary capitalization corrected).

Kendall's first two issues implicate the discretionary aspects of sentence. Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *See Commonwealth v. Perzel*, 291 A.3d 38, 46 (Pa. Super. 2023), *appeal denied*, 301 A.3d 426 (Pa. 2023). Before reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal[;] (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence[;] (3) whether appellant's brief has a fatal defect[;] and (4) whether there is a substantial

question that the sentence appealed from is not appropriate under the Sentencing Code[.]

*Id*. (internal citation omitted). As this Court has explained,

an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. [Additionally], the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. That is, the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. We examine an appellant's [Pa.R.A.P.] 2119(f) statement to determine whether a substantial question exists. Our inquiry must focus on the ***reasons*** for which the appeal is sought, in contrast to the ***facts*** underlying the appeal, which are necessary only to decide the appeal on the merits.

***Commonwealth v. Christman***, 225 A.3d 1104, 1107 (Pa. Super. 2019) (internal citation omitted; emphases in original).

Regarding a Rule 2119(f) statement setting forth the basis for the grant of review of a discretionary sentence claim, this Court has stated:

[T]he Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.,* the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm (*e.g.,* the sentence is unreasonable or the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range).

***Commonwealth v. Clary***, 226 A.3d 571, 580 (Pa. Super. 2020) (internal citation omitted). ***"We cannot look beyond the statement of questions***

- 5 -

*presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists."* Commonwealth v. Crawford, 257 A.3d 75, 78–79 (Pa. Super. 2021) (internal citation and quotations omitted, emphasis added).

Kendall's 2119(f) statement failed to meet the **Crawford** requirements. Kendall did not state where his sentence falls in the guidelines or specify what fundamental norm his sentence violated. Kendall simply recited the four criteria to obtain review of a discretionary sentencing claim and claimed he met those criteria; he provided no assertion that he set forth a substantial question. **See** Kendall's Brief at 7-8. Kendall thus did not raise a substantial question permitting review of a discretionary sentence claim. **See Clary**, 226 A.3d at 580; **accord Commonwealth v. Faison**, 297 A.3d 810, 836 (Pa. Super. 2023) (concluding the appellant failed to raise a substantial question where he did not "specify what factors in particular the [sentencing] court ignored, or why his circumstances justified the imposition of a concurrent sentence").[4] This Court will not accept a bald statement of sentencing errors

---

[4] Additionally, Kendall's 2119(f) statement does not include the claims he asserts in his argument: that the trial court failed to weigh mitigating circumstances or did not adequately support the imposition of an aggravated-range sentence.

as a sufficient demonstration of a substantial question. **See Faison**, 297 A.3d at 835. Kendall's first two claims are, accordingly, unreviewable.[5]

Kendall's final issue challenges the sufficiency of the evidence regarding the trial court's SVP determination.

Challenges to the sufficiency of the evidence present questions of law, and the standard of review is *de novo*, and the scope of review plenary. **See Commonwealth v. Meals**, 912 A.2d 213, 218 (Pa. 2006); **Commonwealth v. Aumick**, 297 A.3d 770, 776 (Pa. Super. 2023) (*en banc*). This Court must review an undiminished record without regard to the admissibility of the evidence. **See Commonwealth v. Sanford**, 863 A.2d 428, 432 (Pa. 2004). Moreover, in reviewing the sufficiency of the evidence, this Court does not question or reweigh the evidence. **See Meals**, 912 A.2d at 222-23. Rather, our review is limited to whether the record, when viewed in a light favorable to the Commonwealth, establishes clear and convincing evidence to sustain

---

[5] Even were the claims reviewable, they would be meritless. The court explained its reasons for its aggravated-range sentence, including Kendall's years-long abuse of a girl with whom he stood in a position of trust, his lack of remorse, and his threat to kill her. To the extent Kendall asserts his sentence was inconsistent with the protection of the public, his rehabilitative needs, his pre-crime conduct and life, his "past history of good conduct . . . and . . . no indication of recurrence," **see** Kendall's Brief at 11, 18, as addressed below with regard to Kendall's SVP challenge, the court was aware of allegations Kendall had sexually abused his sisters as a child, and had been accused of sexually abusing another girl, evidence contradicting Kendall's assertion of his prior good conduct and "no indication of recurrence." **See** Kendall's Brief at 12.

the trial court's finding that an individual meets the statutory definition of an SVP. *See id*.

The dispositive issue in an SVP determination is whether the individual convicted of a sexually violent offense has a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. *See* 42 Pa.C.S.A. § 9799.12; *accord Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa. Super. 2008). Subchapter H of SORNA details the procedures to determine whether an individual is an SVP. *See* 42 Pa.C.S.A. § 9799.24. Specifically, the trial court must order the SOAB to conduct an assessment, after which the SOAB conducts an assessment and submits its report to the district attorney. *See* 42 Pa.C.S.A. § 9799.24(a), (d). The Commonwealth may then praecipe the trial court for an SVP hearing and serve copies of the praecipe and the SOAB report to the defense. *See* 42 Pa.C.S.A. § 9799.24(e)(1).

An assessment shall include, but not be limited to, an examination of the following:

    (1)    Facts of the current offense, including:

        (i)     Whether the offense involved multiple victims.
        (ii)    Whether the individual exceeded the means necessary to achieve the offense.
        (iii)   The nature of the sexual contact with the victim.
        (iv)   Relationship of the individual to the victim.
        (v)    Age of the victim.

(vi)  Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii)  The mental capacity of the victim.

(2)  Prior offense history, including:

(i)  The individual's prior criminal record.

(ii)  Whether the individual completed any prior sentences.

(iii)  Whether the individual participated in available programs for sexual offenders.

(3)  Characteristics of the individual, including:

(i)  Age of the individual.

(ii)  Use of illegal drugs by the individual.

(iii)  A mental illness, mental disability or mental abnormality.

(iv)  Behavioral characteristics that contribute to the individual's conduct.

(4)  Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense.

§ 9799.24(b)(1)-(4); *Aumick*, 297 A.3d at 777-78.

A SOAB expert opinion falls within the general rules regarding expert witnesses.  *See id*. at 778.  In this regard, Pa.R.E. 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
**(b)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

**(c)**   the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Rule 703 identifies the facts and data upon which an expert may base his or her opinion:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.   An expert may consider the affidavit of probable cause, the criminal information, the criminal complaint, the preliminary hearing transcript, and the investigative report Child Protective Services prepared. *See Aumick*, 297 A.3d at 781.  "If the expert states an opinion, the expert must state the facts or data on which the opinion is based."  Pa.R.E. 705; *see also* Pa.R.E. 705 Cmt. (explaining that otherwise inadmissible facts and data supporting an expert opinion are considered only to explain basis for expert's opinion, not as substantive evidence).

The trial court's inquiry at an SVP hearing differs from the SOAB's task.   The SOAB evaluator must consider the factors listed in section 9799.24(b).  The trial court must determine whether the Commonwealth has proven by clear and convincing evidence that the defendant is an individual who has "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A.

§ 9799.12 (providing the definition of a "sexually violent predator"); ***see also***

***Commonwealth v. Butler***, 226 A.3d 972, 992 (Pa. 2020) (stating, an SVP, in addition to having been convicted of a sexually violent offense, is a person "who [has] been individually determined to suffer from a mental abnormality or personality disorder such that they are highly likely to continue to commit sexually violent offenses").

Kendall claims the court erroneously applied subchapter I of SORNA and erred by imposing consequences based on "mental abnormality," a phrase he asserts is unconstitutionally vague. Kendall also asserts the evidence did not show a mental abnormality, the SOAB assessor did not speak to him before making her original SVP assessment, C.B. did not suffer physical injury, the assessor considered charges later dismissed, and Kendall did not timely receive the SOAB report and if he had he would have provided evidence countering the SVP finding. ***See*** Kendall's Brief at 17-27.[6]

Kendall provides no support for his assertion that the court applied subchapter I of SORNA. The record shows the court applied subchapter H. ***See*** N.T. 3/31/23, at 22. Kendall also fails to provide support for the allegation that the phrase "mental abnormality" is unconstitutionally vague. This Court has rejected a vagueness claim used in Megan's Law, a prior statute

---

[6] The trial court did not address this claim in its opinion.

using the identical phrase as a criterion of an SVP determination. ***See Commonwealth v. Howe***, 842 A.2d 436, 444-45 (Pa. Super. 2004).

Kendall's other challenges largely question the weight the SOAB examiner accorded to various items of evidence. We cannot reweigh the evidence. ***See Aumick***, 297 A.3d at 783. Moreover, the SOAB assessor attended Kendall's interview before reaffirming her conclusion Kendall is an SVP. Kendall does not articulate what evidence he allegedly would have provided that would have defeated the sufficiency of the SOAB assessor's finding. Given the allegations that he had committed prior sexual abuse of children, allegations the SOAB was permitted to consider, ***see Aumick***, 297 A.3d at 781, and the details of Kendall's abuse of C.B., the trial court did not err in its SVP determination.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/26/2024