J-S42040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BRENT A. WARRINGTON :
:
Appellant : No. 84 MDA 2025

Appeal from the Judgment of Sentence Entered August 29, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002552-2021

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED FEBRUARY 24, 2026**

Brent A. Warrington ("Warrington") appeals from the judgment of sentence imposed following his jury convictions of driving under the influence ("DUI") of a controlled substance – impaired ability, possession of a controlled substance, possession of drug paraphernalia, obstruction of administration of law or government function ("obstruction"), and public drunkenness.[1]  We affirm Warrington's convictions but vacate and remand for resentencing.

On June 10, 2021, Pennsylvania State Police Trooper Steven Galbraith ("Trooper Galbraith") responded to a Walmart store in Shrewsbury Township, following a report of a potentially intoxicated individual inside a parked vehicle.  *See* N.T., 6/3/24, at 91.  Trooper Galbraith approached the vehicle

---

[1] 18 Pa.C.S.A. §§ 5101, 5505; 75 Pa.C.S.A § 3802(d)(2); 35 P.S. § 780-113(a)(16), (32).

and found the sole occupant, whom he later identified as Warrington, "stretched across the passenger seat and driver's seat[,] flailing around . . . inside the vehicle, banging on the dashboard, [and] manipulating [the vehicle's] controls." *Id*. at 92-93. Warrington's movements were causing the vehicle to rock back and forth and its lights to blink. *See id*. at 92. The engine of the vehicle was on, and the keys were in the ignition. *See id*.

Trooper Galbraith made verbal contact with Warrington, who identified himself by first and last name. *See id*. at 93. Warrington was sweating profusely, bleeding from cuts on his arms and legs, continuing to move uncontrollably, and speaking in a thick, slurred, and rambling manner. *See id*. at 93-94. In response to questions from Trooper Galbraith, Warrington stated that he had a driver's license and he drove to his current location. *See id*. at 97, 100. Warrington believed he was in the parking lot of a Rutter's store, even though he was not parked in the vicinity of a Rutter's. *See id*. at 100. Warrington stated that he brought his girlfriend with him, and her sister would be picking her up. *See id*. at 98.

Based on his observations of Warrington's apparent intoxication, Trooper Galbraith asked Warrington to exit the vehicle to perform field sobriety tests. *See id*. at 94-95, 100-01. Trooper Galbraith observed numerous signs of impairment during the walk-and-turn and one-leg-stand tests, including issues with balance. *See id*. at 101-07. Warrington exceeded the threshold for impairment for both tests. *See id*. at 106-07. Trooper Galbraith also directed Warrington to perform the modified Romberg balance

test, which determines whether an individual can accurately calculate the passage of thirty seconds.[2] *See id*. at 107-08.  Warrington overestimated the thirty second period by twelve seconds, which was also a sign of impairment. *See id*. at 109.

Following the field sobriety tests, Trooper Galbraith placed Warrington into custody.  *See id*.  Warrington asked Trooper Galbraith to call a family member to take custody of his vehicle so that it would not be towed.  *See id*. at 113.  Trooper Galbraith checked Department of Transportation records during the stop, which confirmed that Warrington owned the vehicle.  *See id*.

Trooper Galbraith requested that Warrington submit to a blood draw, but he refused.  *See id*. at 113-14.  Trooper Galbraith then obtained a search warrant to test Warrington's blood, but he again refused.  *See id*. at 118. During a search of the vehicle, Trooper Galbraith recovered the bottom portion of a soda can with burnt residue and a clear gel capsule from the cup holder in the center console of the car.  *See id*. at 105, 110, 112.  Trooper Galbraith understood that the partial soda can was a common method to prepare controlled substances and the "scramble" capsule "usually contains . . . a mixture between heroin or fentanyl . . . cut with" methamphetamine.  *Id*. at

---

[2] Trooper Galbraith explained that, during the modified Romberg balance test, the officer asks the individual to "stand with his feet together and his arms by his side[,] tilt his head backwards[,] shut his eyes lightly, . . . and estimate the passage of [thirty] seconds in his head."  N.T., 6/3/24, at 108.  "Once he believes [thirty] seconds is up, he's to bring his head back forward and say done." *Id*.

105, 110. During the search of the vehicle, Trooper Galbraith also recovered an orange needle cap and Suboxone. *See id*. at 110.

The Commonwealth charged Warrington with the above-stated offenses. Warrington proceeded to a jury trial. Trooper Galbraith testified to the events set forth above. During his testimony, the parties played the motor vehicle recording ("MVR") from Trooper Galbraith's vehicle and surveillance video of the Walmart parking lot.[3] The parties stipulated to the results of laboratory testing performed by the State Police, which determined: the clear gel capsule contained a residue that "required no analysis;" and the testing of the residue on the soda can showed the presence of fentanyl, a Schedule II controlled substance. N.T., 6/3/24, at 112; *see also* Commonwealth Exhibits 2, 3.

On cross-examination, Trooper Galbraith acknowledged that he did not investigate the identity of Warrington's girlfriend or whether she was in Walmart during the stop. *See* N.T., 6/3/24, at 127-28. Trooper Galbraith stated that he also did not follow up on Warrington's statement, captured on the MVR, that his "buddy . . . was over there." *Id*. at 130. Trooper Galbraith further acknowledged that the Walmart surveillance video depicted an

_____

[3] We note that only Commonwealth's Exhibit 1, which consists of DVDs containing Trooper Galbraith's MVR, appears in the certified record. Defendant's Exhibit 1, which captured the video from Walmart surveillance cameras, is not in the record. As the appellant, Warrington has the "[u]ltimate responsibility" for ensuring the completeness of the certified record. Pa.R.A.P. 1921, *Note*. Nevertheless, we find that the absence of the Walmart surveillance video does not impede our review.

individual wearing dark clothing walking repeatedly around Warrington's vehicle prior to Trooper Galbraith's arrival. ***See id***. at 138, 144-45.

Warrington presented the testimony of William Rider ("Rider"). Rider testified that he: (1) drove Warrington's vehicle to the Walmart on June 10, 2021; (2) was wearing dark-colored clothing that day; (3) "left the car running for" Warrington when he went into the Walmart; (4) did not approach the vehicle after he exited the store because he was on probation at the time and did not want to interact with law enforcement officers; (5) did not observe Warrington using any controlled substances or appearing to be under the influence of controlled substances; and (6) did not observe controlled substances or paraphernalia in the vehicle. N.T., 6/4/24, at 162-68. Rider acknowledged that he was currently serving a sentence for a theft offense and had numerous prior convictions for burglary and other theft offenses. ***See id***. at 160-61. Warrington did not testify at trial.

At the conclusion of trial, the jury found Warrington guilty of DUI, possession of a controlled substance, possession of drug paraphernalia, and obstruction. The trial court found him guilty of the summary offense of public drunkenness.

On August 28, 2024, the trial court imposed an aggregate sentence of five to ten years' imprisonment, consisting of consecutive sentences of: three to six years for DUI, one to two years for obstruction, six to twelve months for possession of a controlled substance, and six to twelve months for possession of drug paraphernalia. Each of Warrington's sentences fell within

the standard range of the Sentencing Guidelines. The court was required to impose Warrington's DUI sentence consecutively, because it was his third such offense. *See* 75 Pa.C.S. § 3804(c.2) (providing that a DUI "sentence imposed upon an individual . . . who has two or more prior offenses shall be served consecutively to any other sentence the individual is serving and to any other sentence being then imposed by the court, except for those with which the offense must merge as a matter of law"). The court additionally imposed a fine of $25 for public drunkenness and a mandatory $2,500 fine for DUI. *See* 75 Pa.C.S.A. § 3804(c)(3)(ii) (providing for a third or subsequent DUI conviction, the defendant shall order the defendant to "pay a fine of not less than $2,500") .

On the date of sentencing, after the hearing, the Commonwealth filed a motion for modification of sentence, requesting that the trial court include a mandatory twelve-month period of reentry supervision. *See* 61 Pa.C.S.A. § 6137.2(a), (b), (e) (providing that, when a court imposes an aggregate minimum sentence of total confinement of four years or more, the court shall also impose a consecutive twelve-month period of reentry supervision). On the following day, without holding a hearing, the trial court entered an order on August 29, 2024, modifying Warrington's sentence to include the twelve-month period of reentry supervision.

Warrington also filed a timely post-sentence motion, seeking a modification of his sentence and a judgment of acquittal. To the extent he sought a modification of his sentence, Warrington requested relief on the

grounds that: (1) "the structure of the sentence imposed was a reflection of the [trial c]ourt's disdain for" him after he "fail[ed] to appear for his original sentencing date;"[4] and (2) the court "imposed a harsher and unreasonable sentence for" possession of a controlled substance and possession of drug paraphernalia when the evidence supporting those offenses "likely served as the evidentiary basis for the DUI conviction." Motion for Post-Sentence Relief, 9/9/24, at 2-3 (unnumbered).

The trial court denied Warrington's motion, and he filed this timely notice of appeal. Both he and the trial court complied with Pa.R.A.P. 1925.

Warrington presents the following issues for our review:

[1.] Whether or not the evidence presented at trial was insufficient, as a matter of law, to convict [Warrington] of [DUI].

[2.] Whether or not the evidence presented at trial was insufficient, as a matter of law, to convict [Warrington] of possession of a controlled substance — namely fentanyl.

[3.] Whether or not the sentencing court's imposition of consecutive sentences amounts to a manifest abuse of discretion.

Warrington's Brief at 6 (issues reordered for ease of disposition and unnecessary capitalization omitted).

In his first issue, Warrington challenges the sufficiency of the evidence with respect to his DUI conviction. Specifically, Warrington avers that the

_____

[4] After Warrington failed to appear at the initial sentencing hearing on August 2, 2024, the trial court issued a bench warrant. He was detained in Maryland on August 16, 2024 and transported to York County.

evidence was insufficient to establish he was in actual physical control of a vehicle.

Our review of a sufficiency claim is well settled:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Scott***, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted and italicization added).

Any doubts regarding a defendant's guilt may be resolved by the [factfinder] unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. . . .

***Commonwealth v. McClendon***, 874 A.2d 1223, 1228 (Pa. Super. 2005) (citations omitted).

The Vehicle Code[5] defines DUI, in pertinent part, as follows:

_____

[5] ***See*** 75 Pa.C.S.A. §§ 101-9805.

> **(d) Controlled substances.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> * * * *
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2). To sustain a conviction under Section 3802(d)(2), the Commonwealth must "prove that, while driving or operating a vehicle, the accused was under the influence of a drug or combination of drugs to a degree that impaired his or her ability to safely drive that vehicle." ***Commonwealth v. Macik***, 319 A.3d 529, 534 (Pa. Super. 2024).

With respect to the element of a DUI offense that an individual operated a vehicle, we have explained:

> The term "operate" requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle. Courts review a combination of the following factors to determine whether a person had "actual physical control" of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. A determination of actual physical control of a vehicle is based upon the totality of the circumstances.

***Commonwealth v. Bathurst***, 288 A.3d 492, 501 (Pa. Super. 2023) (citations and some quotation marks omitted).

Warrington argues that the Commonwealth's evidence showed only that he was present in the passenger compartment of his vehicle and not that he

actually physically controlled it. He notes there was no eyewitness testimony that he drove the vehicle and the dispatch call that prompted Trooper Galbraith's response to the scene stated only that a person inside of a parked vehicle appeared intoxicated. Warrington contends his "alleged admission of being the driver should have been discounted by the jury given his purported state of being under the influence of controlled substances." Warrington's Brief at 35. He additionally asserts "the only corroborating evidence of a potential operation of the vehicle" was Rider's testimony he drove to the Walmart and left Warrington inside with the engine running and the surveillance video showing an individual in dark clothing walking around the vehicle. *Id*. Warrington therefore contends "the evidence [he was in] actual physical control [of the vehicle] was so weak and inconclusive as a matter of law no probability of fact could be drawn from the combined circumstances." *Id*.

In its opinion, the trial court found that the Commonwealth presented sufficient evidence to show Warrington operated the parked vehicle where: (1) "the vehicle belonged to" Warrington; (2) he "was the only individual in the vehicle;" (3) "[d]uring the entire time . . . Trooper [Galbraith] was engaged in conversation with [Warrington, he] never said that anyone other than himself drove the vehicle;" and (4) Warrington "admitted to driving the vehicle to the Walmart." Trial Court Opinion, 3/31/24, at 7. With regard to Rider's testimony that he drove to the Walmart, the court reasoned the "jury chose not to believe [his] testimony, which they were entitled to do." *Id*.

Based on our review and viewing the record in the light most favorable to the Commonwealth, we conclude that the evidence at trial was sufficient to convict Warrington of DUI of a controlled substance — impaired ability. *See Scott*, 325 A.3d at 849. As noted above, Warrington only challenges the element of the DUI offense that he operated the vehicle and not that he was under the influence of a drug that impaired his ability to safely operate the vehicle. Here, the evidence was clearly sufficient to show Warrington's actual physical control of his vehicle. First, and foremost, he ***admitted*** to Trooper Galbraith that he drove to Walmart. When Trooper Galbraith asked Warrington "how [he] got there," Warrington responded "that he ha[d] a driver's license." N.T., 6/3/24, at 97. Trooper Galbraith again queried Warrington "if he drove there," to which Warrington answered, "Yes." *Id*. at 100.

Trooper Galbraith described additional statements by Warrington showing his operation of the vehicle, including Warrington's acknowledgement "he brought his girlfriend with him" to Walmart and his request that Trooper Galbraith call a family member to take custody of his vehicle so that it would not get towed. *Id*. at 98, 113. Moreover, Trooper Galbraith detailed numerous other observations that demonstrated Warrington's actual physical control of the vehicle, including that: Warrington was the only occupant of the vehicle; he was "stretched across the passenger seat and driver's seat of the vehicle" when Trooper Galbraith approached; the "keys were in the ignition,

- 11 -

and the . . . engine was running;" and Department of Transportation records showed the vehicle was registered to Warrington. *Id*. at 92, 113.

While Warrington requests that this Court "discount[]" his admission to Trooper Galbraith that he drove to the Walmart and credit Rider's testimony that he was the driver, such arguments are not properly before us in a sufficiency of the evidence analysis and may only be raised in a weight of the evidence claim. Warrington's Brief at 35; *see also Scott*, 325 A.3d at 849 (explaining that when addressing a sufficiency claim, we may not assess the credibility of witnesses, re-weigh the evidence, or substitute our judgment for that of the factfinder); *Commonwealth v. Miller*, 172 A.3d 632, 643 (Pa. Super. 2017) (noting that a weight of the evidence challenge concedes that there was sufficient evidence to convict "but questions which evidence is to be believed"). As Warrington did not present a weight of the evidence claim before the trial court, we may not address any such argument in this appeal. *See Commonwealth v. Barkman*, 295 A.3d 721, 736 (Pa. Super. 2023) (stating that an appellant must raise a weight of the evidence challenge before the trial court by motion or orally at sentencing and failure to do so results in waiver of the claim).

Accordingly, we conclude that the Commonwealth presented sufficient evidence to permit the jury to find that Warrington drove to the Walmart on June 10, 2021 and was in actual physical control of his vehicle. *See Bathurst*, 288 A.3d at 501-02 (finding sufficient evidence to show defendant's actual physical control of vehicle where: trooper found defendant in driver's seat of

vehicle; the engine was running, keys were in the ignition, and tail lights were on; and defendant stated he "just came from" a bar); **see also Commonwealth v. Dirosa**, 249 A3d 586, 590 (Pa. Super. 2021) (holding evidence sufficient to demonstrate defendant's physical control of vehicle where: officers discovered vehicle parked improperly in convenience store parking lot at 2:30 a.m.; defendant "was [found] slumped over in the driver's seat of the running vehicle;" and when officers aroused him, he admitted to consuming "three shots before leaving home"). Warrington's first issue merits no relief.

In his second issue, Warrington argues that the evidence was insufficient to find him guilty of possession of a controlled substance. "To sustain a conviction for the crime of possession of a controlled substance, the Commonwealth must prove that [the accused] knowingly or intentionally possessed a controlled substance without being properly registered to do so under the" Controlled Substance, Drug, Device and Cosmetic Act (the "Act").[6] **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa. Super. 2012); **see also** 35 P.S. § 780-113(a)(16).

With respect to the "knowingly or intentionally" element of the offense, this Court has explained:

> A person who intends to possess a controlled substance, believes he possesses a controlled substance, and in fact possesses a controlled substance is guilty of [possession of a controlled

---

[6] **See** 35 P.S. §§ 780-101 to 780-144.

substance]. The only knowledge that is required to sustain the conviction is knowledge of the controlled nature of the substance. The defendant need not know the chemical name or the precise chemical nature of the substance.

*Commonwealth v. Beatty*, 227 A.3d 1277, 1285 (Pa. Super. 2020) (citation omitted). Additionally, the Crimes Code[7] defines "knowingly" and "intentionally" as follows:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result[.]

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist[.]

18 Pa.C.S. § 302(b)(1)(i)-(ii), (2)(i); *see also Commonwealth v. Mohamud*, 15 A.3d 80, 90 n.25 (Pa. Super. 2010) (explaining that the definitions of Section 302 apply to offenses under the Act).

"In narcotics possession cases, the Commonwealth may meet its burden by showing . . . constructive possession of the contraband." *Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. Super. 2014) (citation omitted).

_____

[7] *See* 18 Pa.C.S.A. §§ 101-9546.

> [T]he concept of constructive possession is a legal fiction used to prove the element although the individual was not in physical possession of the prohibited item. The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it. Dominion and control means the defendant had the ability to reduce the item to actual possession immediately or was otherwise able to govern its use or disposition as if in physical possession. Mere presence or proximity to the contraband is not enough. Constructive possession can be established by inferences derived from the totality of the circumstances.

*Commonwealth v. Peters*, 218 A.3d 1206, 1209 (Pa. 2019) (citations omitted).

Warrington argues that Commonwealth's evidence concerning the presence of fentanyl in his vehicle was insufficient to show he possessed a controlled substance. He recognizes the parties stipulated that the residue on the bottom portion of the soda can recovered from the center console "was analyzed and contained fentanyl, which is a schedule II controlled substance." N.T., 6/3/24, at 112. However, Warrington asserts, because "[n]o weight of the [fentanyl] was provided[,] it can be inferred that the residue was not so great that a weight of the substance could be ascertained." Warrington's Brief 36. Therefore, he contends that "[a]t best, the evidence presented at trial was that [he] may have been aware of what the substance [was] before it was burnt and left in residue state." *Id*. at 36-37. Warrington argues that, as the Commonwealth did not establish he was "aware of the continued presence and nature of the controlled substance after it was ingested," this

Court must set aside his possession of a controlled substance conviction. *Id*. at 37.

In its opinion, the trial court cited the following evidence supporting Warrington's possession of a controlled substance conviction: (1) he was the only occupant of the vehicle and was found lying across the driver's and front passenger seat; (2) he owned the vehicle; (3) Trooper Galbraith discovered the soda can in the center console; (4) the parties stipulated that the residue tested positive for fentanyl; and (5) there was substantial evidence he was under the influence of a controlled substance given his behavior and poor performance on the field sobriety tests. Trial Court Opinion, 3/31/24, at 9. The court determined that, given this evidence, it was reasonable for the jury to conclude that he exercised dominion and control over the soda can and he was aware of the nature of the fentanyl residue located on the can. *See id*. at 8-9.

After careful review, we determine the trial evidence and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, was sufficient to establish beyond a reasonable doubt that Warrington committed possession of a controlled substance. *See Scott*, 325 A.3d at 849. The Commonwealth adduced sufficient evidence to show Warrington constructively possessed the fentanyl, as Trooper Galbraith discovered the soda can containing the residue in the center console of Warrington's vehicle, next to where he was sitting. *See Peters*, 218 A.3d at 1209. Furthermore, Trooper Galbraith's observations of Warrington's physical

condition supported the conclusion that he exercised actual physical possession of the fentanyl and ingested it before the trooper's arrival. *See id*. The evidence of Warrington's proximity to the fentanyl and intoxication likewise was sufficient to allow the jury to infer he intended to possess the drug and knew of its nature as a controlled substance. *See Beatty*, 227 A.3d at 1285.

To the extent Warrington argues that the Commonwealth did not meet its burden because it did not introduce evidence of the specific quantity of fentanyl, this claim is meritless. While the Act includes a tiered system of liability for possession of marijuana based on the amount of the drug possessed, the legislature did not establish such tiers for the fentanyl Warrington possessed. *See* 35 P.S. § 780-113(a)(31) (defining offense of "possession of a small amount of marihuana," consisting of up to "thirty . . . grams of marihuana or eight . . . grams of hashish" for personal use); *see also Commonwealth v. Giampa*, 846 A.2d 130, 132 (Pa. Super. 2004) (sustaining possession of a controlled substance conviction based on small amount of steroids, noting "the legislature knew how to exempt the possession of small amounts of a drug from penalties, as it did in drafting a section providing for lesser penalties for possession of small amounts of marijuana"). Moreover, we have held the analogous possession of a controlled substance with intent to distribute offense does not require proof of a specific amount of drug to sustain a conviction. *See Commonwealth v. Williams*, 565 A.2d 160, 169 (Pa. Super. 1989) (explaining that the "Act does not

designate the minimum amount of a controlled substance which must be delivered to constitute grounds for criminal liability"); *see also* 35 P.S. § 780-113(a)(3) (defining the possession with intent to distribute offense). As the Commonwealth sustained its burden to prove Warrington's possession of a controlled substance, no relief is due on his second issue.

In his final issue, Warrington challenges the discretionary aspects of his sentence. He presents three arguments why the sentence imposed was excessive: (1) the trial court imposed consecutive sentences for possession of a controlled substance and possession of drug paraphernalia based on the same evidence underlying the DUI conviction; (2) "the aggregate sentence . . . failed to consider [his] rehabilitative potential evidenced through his positive adjustment to pre-trial supervision, family responsibilities and over three . . . years of sobriety;" and (3) the "court expressed a desire for [him] to participate in the state drug treatment program" but unreasonably structured his sentences consecutively so that he would have "to serve three . . . years of incarceration before being eligible for said program." Warrington's Brief at 29 (unnecessary capitalization omitted).

A challenge to the sentencing court's discretion is not appealable as of right. *See Commonwealth v. Akhmedov*, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*).

> Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief

setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence;" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. (citation and brackets omitted).

"To properly preserve an issue challenging the discretionary aspects of sentencing, a defendant must object and request a remedy at sentencing, or raise the challenge in a post-sentence motion." **Commonwealth v. Clary**, 226 A.3d 571, 579 (Pa. Super. 2020); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). The failure of a defendant to preserve a discretionary sentencing issue before the trial court results in waiver. **See Clary**, 226 A.3d at 579 n.7. "Furthermore, a defendant is required to preserve [any discretionary sentencing] issue in a court-ordered Pa.R.A.P.1925(b) concise statement[.]" **Commonwealth v. Cartrette**, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*); **see also** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

In the instant case, Warrington filed a timely post-sentence motion and notice of appeal and included a Rule 2119(f) statement in his brief. However, Warrington only raised one of the three claims he presents in this appeal — that the trial court abused its discretion by imposing consecutive sentences for the possession offenses when the same evidence supported his DUI conviction — in his post-sentence motion and Rule 1925(b) statement. **See**

Motion for Post-Sentence Relief, 9/9/24, at 2-3. Warrington failed to include his other two appellate discretionary sentencing claims — that the court failed to consider his rehabilitative potential and structured his sentence to prevent his prompt participation in the state drug treatment program — in his post-sentence motion and Rule 1925(b) statement. Therefore, we conclude that Warrington has only preserved his claim regarding the court's imposition of consecutive sentences for the possession and DUI offenses and find his other two discretionary sentencing claims waived. **See Clary**, 226 A.3d at 579 & n.7; **see also Cartrette**, 83 A.3d at 1042.

Next, we examine Warrington's Rule 2119(f) statement to determine whether he has raised a substantial question meriting our review. **See Akhmedov**, 216 A.3d at 328. An appellant presents a substantial question when he advances an argument that the sentence was inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. **See id**. "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.** (citation omitted).

Warrington asserts in his Rule 2119(f) statement that his possession of a controlled substance and possession of drug paraphernalia sentences were inconsistent with the fundamental norms of the sentencing process, because "the trial court took the primary evidence relied upon to convict [him of DUI] — *i.e.* the drug paraphernalia and stipulation that the residue tested positive

for fentanyl — and imposed an additional one . . . to two . . . years aggregate onto his overall sentence." Warrington's Brief at 24.

We conclude that Warrington has failed to raise a substantial question. *See Akhmedov*, 216 A.3d at 328. Warrington does not challenge the individual sentences he received for possession of a controlled substance, possession of drug paraphernalia, and DUI, but only that the trial court ordered the sentences for the former two offenses to run consecutive to each other and to the DUI sentence.[8] "A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question." *Commonwealth v. Faison*, 297 A.3d 810, 835 (Pa. Super. 2023) (citation omitted); *see also Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa. Super. 2018) (observing that this Court has "consistently . . . recognized that excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review"). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Moury*, 992 A.2d 162, 171-72 (Pa. Super. 2010). "[H]owever, a bald claim of excessiveness due to the

---

[8] We note that Warrington does not address his one-to-two-year sentence for obstruction in his brief. *See* Motion for Post-Sentence Relief, 9/9/24, at 3 (stating that Warrington "does not dispute that the sentence imposed on the charge of obstructing . . . is well within the [trial c]ourt' s discretion").

consecutive nature of a sentence will not raise a substantial question." **Faison**, 297 A.3d at 835 (citation omitted).

We note that in **Commonwealth v. Dodge**, 77 A.3d 1263 (Pa. Super. 2013), this Court found the appellant raised a substantial question to his challenge to his aggregate sentence of forty years, seven months to eighty-one years and two months of incarceration following his conviction of forty-five counts of property offenses and one count each of possession of a small a mount of marijuana and possession of drug paraphernalia. **See id**. at 1267. We found that the appellant satisfactorily "articulate[d] reasons why [the] consecutive sentences in [his] particular case [were] clearly unreasonable" as he claimed his aggregate sentence amounted to "'a virtual life sentence' for non-violent property crimes." **Id**. at 1270-71. However, "[w]e cautioned that although [the appellant] had raised a substantial question in his particular case, a defendant does not raise a substantial question 'where the facts of the case [being reviewed] do not warrant the conclusion that there is a plausible argument that the sentence is *prima facie* excessive based on the criminal conduct involved.'" **Radecki**, 180 A.3d at 470 (*quoting* **Dodge**, 77 A.3d at 1271).

The present matter is distinguishable from **Dodge**, as Warrington does not assert that his aggregate sentence of five to ten years' imprisonment was excessive in light of the conduct underlying his convictions. Rather, Warrington only challenges his sentences for possession of a controlled substance and possession of drug paraphernalia, which added one to two

years' imprisonment to his aggregate term. Moreover, Warrington does not argue that his sentences for the two possession offenses were disproportionate to his conduct, but instead only asserts — without any legal support — that the court could not impose consecutive sentences for separate crimes based on the same evidence. Therefore, because Warrington has not set forth a *prima facie* claim that the imposition of consecutive sentences rendered his sentence excessive based on his criminal conduct, we conclude that he did not raise a substantial question. ***See Radecki***, 180 A.3d at 470; ***see also Dodge***, 77 A.3d at 1271.

Moreover, even if we were to find that Warrington raised a substantial question, we would conclude that he is not entitled to relief. We apply the following standard of review to a discretionary sentencing claim:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Taylor***, 277 A.3d 577, 592-93 (Pa. Super. 2022) (citation omitted).

"Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the 'minimum possible' confinement." ***Radecki***, 180 A.3d at 470 (citation omitted). "[L]ong standing precedent . . . recognizes that [the Sentencing Code] affords the sentencing court discretion

to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Brown***, 249 A.3d 1206, 1212 (Pa. Super. 2021). Furthermore, when the "sentencing court had the benefit of a presentence investigation report ('PSI'), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Moury***, 992 A.2d at 171 (citation and quotation marks omitted).

As noted above, Warrington contends that the evidence of the burnt residue of fentanyl and drug paraphernalia supporting his possession convictions "was critical to convicting [him of DUI] but was not separate and distinct from the conduct giving rise to the [DUI] charge as to warrant consecutive sentences." Warrington's Brief at 28-29. He further argues that the Commonwealth did not present evidence of any "discernible amount of fentanyl" on the soda can and gel capsule that also served as the paraphernalia in this case. ***Id***. at 28.

At sentencing, the trial court considered the argument and recommendations of the Commonwealth and defense counsel, Warrington's allocution, and testimony from his mother. ***See*** N.T., 9/28/24, at 4-16. The court stated it reviewed Warrington's PSI, which reflected his extensive criminal history and his status as a repeat felony offender under the sentencing guidelines. ***See id***. at 17.

In finding that sentences in the standard guideline range were appropriate, the trial court stated it was "not willing to give up on [Warrington] quite yet." *Id*. at 17. The court indicated in its opinion that "it imposed standard[-]range sentences specifically to allow [Warrington] to pursue at least state drug treatment court." Trial Court Opinion, 3/31/24, at 3. The court noted that because Warrington had two prior DUI convictions, the Vehicle Code required that the court run his instant DUI sentence consecutive with his other sentences. *See id*. at 2-3 (*citing* 75 Pa.C.S. § 3804(c.2)).

The trial court further reasoned that the evidence of paraphernalia and controlled substances "was just a fraction of the evidence relied upon by the Commonwealth to convict" Warrington of DUI. *Id*. at 4. To the extent Warrington appeared to argue the fentanyl residue was *de minimis*, the court found that "the Commonwealth was not required to prove any particular amount [of controlled substances under the Act], and the amount of fentanyl in [his] possession [was] of no moment." *Id*. at 3.

Based on our review, we find no abuse of discretion in the sentence imposed by the trial court. *See Taylor*, 277 A.3d at 592-93. The record reflects that the court reviewed the PSI and thus was aware of Warrington's personal characteristics and history. *See Moury*, 992 A.2d at 171. The court acted within its discretion in deciding to run his standard-range sentences consecutively, rather than concurrently. *See Brown*, 249 A.3d at 1212. Indeed, as the court observed, it was *required* to impose a consecutive

sentence on the DUI count, because it was Warrington's third such conviction. **See** 75 Pa.C.S. § 3804(c.2).

Furthermore, Warrington's claim, that the trial court could not impose consecutive sentences for possession of a controlled substance and possession of drug paraphernalia because they relate to the same conduct as his DUI conviction, lacks merit. "The mere fact that . . . crimes arose out of the same incident does not mean that [a defendant] is entitled to receive concurrent sentences." **Commonwealth v. Bonner**, 135 A.3d 592, 605 (Pa. Super. 2016). Warrington does not present a claim that any of his sentences merge, which requires consideration of whether they arose "from a single criminal act." 42 Pa.C.S.A. § 9765. In any event, we note that there was substantial additional evidence supporting his DUI conviction aside from his possession of fentanyl and paraphernalia, including Trooper Galbraith's observations of Warrington's inebriated state and his performance on the field sobriety tests.

As discussed above, the Commonwealth had no obligation to prove Warrington possessed a specific quantity of fentanyl to sustain a conviction for possession of a controlled substance. Warrington's claim that the court could not impose a consecutive sentence for possession of a controlled substance absent proof of the weight of the drug is equally baseless. Accordingly, Warrington's discretionary sentencing claim merits no relief.

Finally, although Warrington raises no issue concerning the trial court's modification of his sentence, to add a twelve-month period of reentry supervision, we *sua sponte* consider the legality of imposing this sentence in

Warrington's absence. *See Commonwealth v. Derrickson*, 242 A.3d 667, 673 (Pa. Super. 2024) (stating that "[t]he legality of a criminal sentence is non-waivable, and this Court may raise and review an illegal sentence *sua sponte*"). When reviewing the legality of a sentence, our standard of review is *de novo*, and our scope of review is plenary. *See id*.

As noted above, following the sentencing hearing, the Commonwealth filed a motion, requesting the trial court to include a twelve-month period of reentry supervision pursuant to 61 Pa.C.S.A. § 6137.2(a), (b), (e) (providing that, when a court imposes an aggregate minimum sentence of total confinement of four years or more, the court shall also impose a consecutive twelve-month period of reentry supervision). Here, the trial court initially imposed an aggregate minimum sentence of five years' imprisonment. Thus, the imposition of twelve months' reentry supervision would be proper under Section 6137.2.

However, Pennsylvania Rule of Criminal Procedure 602(A) provides generally that "[t]he defendant **shall** be present . . . at the imposition of sentence." Pa.R.Crim.P. 602(A) (emphasis added).

We further note that this Court recently issued an opinion in *Commonwealth v. Mumford*, 81 MDA 2025, ___ A.3d ___ (Pa. Super. 2026). In that matter, the trial court imposed sentence. It subsequently entered an amended sentencing order, without a hearing, which added a one-year term of reentry supervision pursuant to Section 6137.2. This Court did not question the application of Section 6137.2, but held that because "there

[was] no indication that the trial court conducted a resentencing hearing or that [the defendant] was present when the amended sentence was imposed, [the] sentence [was] illegal." *Id*. at _____.  This Court thus affirmed the convictions but vacated the amended sentence and remanded for the trial court to conduct a resentencing hearing.

We conclude the decision in *Mumford* is applicable to and binding on this matter.  *Mumford* presented a sentencing procedural history, with regard to Section 6137.2, that is identical to the one before us.  Because the trial court amended the sentence and imposed the additional twelve months' reentry supervision without a hearing or Warrington's presence, we similarly determine the amended sentence is illegal.  We affirm his convictions but vacate the sentence and remand for the trial court to conduct resentencing consistent with Rule 602(A) and *Mumford*.

Convictions affirmed.  Judgment of sentence vacated.  Case remanded for resentencing consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/24/2026

- 28 -